**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JENY M. T. O.[1] <br><br>      Petitioner, <br><br>    v. <br><br>FERETI SEMAIA, ET AL., <br><br>      Respondents. | Case No. 5:26-cv-02036-AJR <br><br>**MEMORANDUM DECISION AND ORDER GRANTING PETITION AND ORDERING IMMEDIATE RELEASE** |

**I.**

**INTRODUCTION**

On April 22, 2026, Petitioner Jeny M. T. O. ("Petitioner"), an immigration detainee represented by counsel, filed a Verified Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief pursuant to 28 U.S.C. § 2241 (the "Verified Petition"), challenging her detention in immigration custody. (Dkt. 1

---

[1] At Petitioner's request, the Court abbreviates Petitioner's name consistent with the guidance issued by the Committee on Court Administration and Case Management of the Judicial Conference of the United States. See Memorandum Re: Privacy Concern Regarding Social Security & Immigration Opinions (May 1, 2018), available at https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

at 3.)  On April 29, 2026, Respondents Fereti Semaia, Warden of Adelanto Immigration and Customs Enforcement ("ICE") Processing Center, Todd Blanche, Acting Attorney General, Markwayne Mullin, Secretary, Department of Homeland Security ("DHS"), Todd Lyons, Acting Director, ICE, Jaime Rios, Los Angeles Field Office Director, ICE, and ICE (collectively, "Respondents") filed an Answer to the Petition stating that "[t]he Respondents are not presenting an opposition argument at this time." (Dkt. 10 at 2.)  The parties have consented to proceed before the undersigned U.S. Magistrate Judge for all purposes.  (Dkts. 5, 8.)  For the reasons set forth below, the Court GRANTS the Petition and orders Respondents to immediately release Petitioner from custody on her prior conditions of parole.

## II.

## FACTUAL BACKGROUND

The Court sets forth a summary of the relevant factual background based on the facts alleged in the Verified Petition.  (Dkt. 1 at 30.)  Respondents had the opportunity to dispute the facts alleged in the Verified Petition or to provide additional facts, but declined to do so.  (Dkt. 10.)  Accordingly, the facts alleged in the Verified Petition are undisputed and have been conceded by Respondents.  See C.D. Cal. L.R. 7-12.

Petitioner is a 53-year-old citizen of Ecuador.  (Dkt. 1 at 3.)  Petitioner was forced to flee Ecuador in October of 2022 due to almost two decades of extreme physical, psychological, and sexual abuse at the hands of an ex-partner due to Petitioner's political opinions and gender.  (Id. at 4-5.)  Upon entering the United States near El Paso County, Texas, on or about November 19, 2022, Petitioner was detained for about two weeks in Laredo, Texas.  (Id. at 5.)  Petitioner was then issued an "Interim Notice Authorizing Parole" on December 2, 2022, informing her that ICE had decided to "parole [her] from its custody pursuant to its authority under Section 212(d)(5)(A) of the Immigration and Nationality Act" for one calendar year.

(Id.)

Petitioner filed a timely application for asylum on November 16, 2023, and has diligently appeared at all her immigration court hearings and ICE check-ins, including her final ICE check-in at which she was detained. (Id.) While attending her immigration court hearings, Petitioner began establishing her life in the Untied States. (Id. at 6.) Petitioner settled in Los Angeles and began rebuilding her life, despite significant challenges, including a violently abuse partner and a sexual assault perpetrated by her own cousin, whom she had known and loved since childhood. (Id.) On August 14, 2025, Petitioner filed an application for a U-Visa with U.S. Customs and Immigration Services, based on the sexual assault perpetrated against her in August of 2024. (Id.)

On February 6, 2026, Petitioner was re-arrested by ICE during a routine check-in despite having been issued parole by ICE on December 2, 20222. (Id. at 3.) Petitioner was scheduled to have a Master Calendar Hearing at the West Los Angeles Immigration Court on February 10, 2026, but was detained without warning during that routine ICE check-in on February 6, 2026, just four days before her court date. (Id. at 5.) Petitioner was ultimately transferred to the Adelanto ICE Processing Center, where she has been held ever since. (Id. at 6.)

## III.

## SUMMARY OF PETITIONER'S CLAIMS

Petitioner contends that her re-detention without a pre-deprivation hearing violated her procedural due process rights. (Dkt. 1 at 10-14.) Petitioner further contends that her continued detention violates her substantive due process rights. (Id. at 14-15.) Petitioner seeks immediate release from custody and an order prohibiting Respondents from re-detaining her unless they provide a pre-deprivation hearing at which the Government bears the burden of proof by clear and convincing evidence to show that Petitioner is a flight risk or danger to the community. (Id. at

28-29.)  Finally, Petitioner seeks an award of reasonable attorneys' fees and costs pursuant to the Equal Access to Justice Act ("EAJA").  (Id. at 29.)

### IV.

### LEGAL STANDARD

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law.  See U.S. Const., amend. V.  There is no question that these protections extend to noncitizens present in the United States.  See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (per curiam) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings." (internal quotation marks and brackets omitted)).  Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ."  Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990).  Indeed, the Due Process Clause provides both procedural and substantive protections.  See, e.g., Regino v. Staley, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process." (internal quotation marks omitted)).  To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976).  See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)).  Under

4

Matthews, courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

In addition to the procedural protections of the Due Process Clause, "[s]ubstantive due process protects individuals from state action that interferes with fundamental rights." Regino, 133 F.4th at 959-60. Governmental action that infringes a fundamental right is constitutional only if "the infringement is narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 302 (1993). By contrast, governmental action that does not infringe a fundamental right survives "substantive-due-process scrutiny so long as [the action is] rationally related to legitimate government interests." Stormans, Inc. v. Wiesman, 794 F.3d 1064, 1085 (9th Cir. 2015) (internal quotation marks omitted). To assess whether there has been a violation of a fundamental right, courts must begin with "a careful description of the asserted fundamental liberty interest." Washington v. Glucksberg, 521 U.S. 702, 721 (1997) (internal quotation marks omitted). With that careful description in mind, courts must then decide whether the asserted interest is "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if it was sacrificed." Khachatryan v. Blinken, 4 F.4th 841, 858 (9th Cir. 2021) (internal quotation marks and brackets omitted).

5

## V.

## ANALYSIS

It is undisputed that Petitioner entered the United States in October of 2022 and was ultimately released on parole after initially being detained.[2]  (Dkt. 1 at 3-5.) Thus, the Court concludes that once Petitioner was released from custody on parole, she acquired "a protected liberty interest in remaining out of custody."  Pinchi v. Noem, 792 F.Supp.3d 1025, 1032 (N.D. Cal. July 24, 2025) (collecting cases); Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021, 1030 (N.D. Cal. 2025) ("The Supreme Court has recognized this protected liberty interest even though the released individual is subject to extensive conditions of release, like reporting regularly to a parole officer, not using alcohol, and not traveling out of the country.").  Indeed, "the government's decision to release an individual from custody creates an implicit promise, upon which that individual may rely, that their liberty will be revoked only if they fail to live up to the conditions of release." Pinchi, 792 F.Supp.3d at 1032 (internal quotation marks, brackets, and ellipses omitted).  This "liberty is valuable and must be seen as within the protection of the [Due Process Clause]."  Morrissey v. Brewer, 408 U.S. 471, 482 (1972).

Petitioner's liberty interest in remaining out of custody is strengthened by the several years she spent out of custody building a life for herself in the United States with his family.  See, e.g., Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025) ("The lengthy duration of his conditional release as well as the meaningful connections Petitioner seems to have made with his community during that time create a powerful interest for Petitioner in his continued liberty.").  Indeed, Petitioner settled in Los Angeles and began rebuilding her life, despite significant

---

[2] The fact that Petitioner was released from custody necessarily means that Petitioner demonstrated to the satisfaction of immigration officials that Petitioner's release would not pose a danger to property or persons and that Petitioner was likely to appear for any future proceeding.  See Fernandez Lopez v. Wofford, 2025 WL 2959319, at *2 (E.D. Cal. Oct. 17, 2025).

challenges, including a violently abuse partner and a sexual assault perpetrated by her own cousin, whom she had known and loved since childhood.  (Dkt. 1 at 6.) Petitioner's undisputed ties to the community further strengthen her liberty interest in remaining out of custody.  See, e.g., Garcia v. Andrews, 2025 WL 1927596, at *4 (E.D. Cal. July 14, 2025) ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty.").

It is also undisputed that Petitioner had appeared at all ICE check-ins and was detained without notice or a pre-deprivation hearing.  (Dkt. 1 at 3-5.)  Thus, the Court concludes that Petitioner's detention by ICE on February 6, 2026, without notice or a pre-deprivation hearing, violated her procedural due process rights.  See, e.g., Mourey v. Bowen, 2026 WL 467567, at *4 (C.D. Cal. Jan. 31, 2026) ("Pursuant to the holding in Mathews, Petitioner should have been afforded a pre-detention hearing."), report and recommendation adopted, 2026 WL 464788 (C.D. Cal. Feb. 17, 2026); Fernandez Lopez v. Wofford, 2025 WL 2959319, at *6 (E.D. Cal. Oct. 17, 2025) ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing, which should have been provided before she was detained."); Maldonado Vazquez v. Feeley, 805 F. Supp. 3d 1112, 1148 (D. Nev. 2025) ("Where, as here, a noncitizen is detained after having been ordered released, without any process provided by the Government for challenging his continued detention, detention becomes arbitrary and violates due process.").

Given this violation of Petitioner's due process rights, the Court further concludes that "Petitioner's release is necessary to return h[er] to the status quo." Nazarian v. Noem, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025).  The status quo is "the last uncontested status which preceded the pending controversy." GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000) (internal quotation marks omitted).  The last uncontested status here is Petitioner's prior release on parole before her current re-detention.  See Nazarian, 2025 WL 3236209,

7

at *7 ("The last uncontested status in this case is Petitioner's release on his second OSUP before his current re-detention."). "Accordingly, Petitioner's release from custody is the appropriate remedy." Id.; see Esmail v. Noem, 2025 WL 3030590, at *6 (C.D. Cal. Sept. 12, 2025) ("Providing Petitioner an interview *ex post facto*, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process. The fact that he was not given an interview renders his detention unlawful in the first place, necessitating his release.").

Moreover, the Court concludes that due process requires notice and a pre-deprivation hearing before Petitioner may be re-detained. See, e.g., Ixchop Perez v. McAleenan, 435 F. Supp. 3d 1055, 1062 (N.D. Cal. 2020), appeal dismissed sub nom. Perez v. McAleenan, 2020 WL 8970669 (9th Cir. Dec. 4, 2020) ("Accordingly, this court will join the consensus view among District Courts concluding that . . . where . . . the government seeks to detain an alien pending removal proceedings, it bears the burden of proving that such detention is justified." (internal quotation marks omitted)). Specifically, the Court concludes that Respondents must show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community. See, e.g., Mourey, 2026 WL 467567, at *6 ("If the Government seeks to re-detain Petitioner, he must be provided some kind of hearing before the state deprives him of his liberty. Further, such hearing must be before a neutral arbiter in which the Government bears the burden of providing by clear and convincing evidence that Petitioner is a flight risk or danger to the community." (internal quotation marks, brackets, and citation omitted)); Carballo v. Andrews, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing where the government must prove by clear and convincing evidence that he is presently a flight risk or danger to

8

the community.").

The Court notes that "Respondents are not presenting an opposition argument at this time." (Dkt. 10 at 2.) Therefore, Respondents have consented to the relief requested by Petitioner. See C.D. Cal. L.R. 7-12. Finally, the Court notes that Petitioner also requested an award of reasonable attorney's fees and costs under the EAJA. (Dkt. 1 at 29.) The Court will consider an application under the EAJA that is filed within 30 days of entry of final judgment in this action. See Rahimi v. Semaia, 2026 WL 246066, at *3 (C.D. Cal. Jan. 27, 2026) ("The Court will consider an application requesting costs and reasonable attorney's fees under the EAJA that is filed within 30 days of final judgment in this action.").

\\

\\

\\

**VI.**

**CONCLUSION**

Based on the foregoing, the Court GRANTS the Petition as follows. Respondents shall immediately release Petitioner from custody on Petitioner's prior conditions of parole. Respondents shall also immediately return any confiscated property and documents to Petitioner upon release. Respondents shall not re-detain Petitioner without providing at least seven (7) days' notice and a pre-deprivation bond hearing. The pre-deprivation bond hearing shall occur before an Immigration Judge at which the Government bears the burden of proof to show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's

9

future appearance and/or the safety of the community. The Immigration Judge must conduct an individualized assessment of Petitioner's suitability for bond in light of the forgoing standard. Respondents shall file a notice of compliance no later than **twenty-four hours after the entry of Judgment.**

IS SO ORDERED.

DATED: May 1, 2026

_____
HON. A. JOEL RICHLIN
UNITED STATES MAGISTRATE JUDGE